KIRBY AISNER & CURLEY LLP
*Attorneys for Business Finland, Inc.*
700 Post Road, Suite 237
Scarsdale, New York 10583
Tel: (914) 401-9500
Julie Cvek Curley, Esq.
JCurley@kacllp.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
In re:

JANNA COLANGELO,

                          Debtor.

Chapter 7
Case No. 23-22355(SHL)

-----------------------------------------------------------X

## APPLICATION FOR AN ORDER DIRECTING THE PRODUCTION OF DOCUMENTS AND SCHEDULING EXAMINATIONS PURSUANT TO BANKRUPTCY RULE 2004

**TO:   HONORABLE SEAN H. LANE,
       UNITED STATES BANKRUPTCY JUDGE:**

Business Finland, Inc. ("**Business Finland**"), creditor of Jaana Colangelo (the "**Debtor**") and party in interest in the above-captioned Chapter 7 Proceeding, by and through its undersigned counsel, submits this application (the "**Application**") pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") for entry of an order in the form attached hereto as <u>Exhibit A</u> (the "**Order**") directing the production of documents and scheduling examinations. In support of the Application, Business Finland respectfully represents as follows:

### JURISDICTION AND VENUE

1.     The Court has jurisdiction over this Application pursuant to 28 U.S.C. §§ 157 and 1334. Consideration of the Application is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A).

2.     Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      The statutory predicates for the relief requested include section 105(a) of Title 11 of the United States Bankruptcy Code (the "**Bankruptcy Code**") and Bankruptcy Rule 2004.

## BACKGROUND

4.      Business Finland is a Delaware corporation and a wholly owned subsidiary of Business Finland OY based in Helsinki, Finland. Business Finland and the Debtor entered into an employment agreement dated January 2, 2007 with Business Finland, as employer, and the Debtor as employee, with the Debtor's job title as "regional administrator."

5.      During the course of the Debtor's employment with Business Finland., she used her power as sole signatory on Business Finland's checking account maintained at JP Morgan Chase Bank ("**Chase**") to steal **millions** of dollars by diverting funds to covertly maintained bank accounts, transferring Business Finland's funds for her own use, misusing credit cards, issuing checks for herself, borrowing money for her own benefit, and falsifying accounting and bank statements, without the consent or knowledge of Business Finland. Business Finland terminated the Debtor's employment in 2018.

6.      On June 20, 2018, Business Finland commenced an action against the Debtor captioned *Business Finland USA, Inc. v. Jaana Bernadotte-Colangelo and Finpro USA Inc.*, in the Supreme Court of the State of New York, Westchester County, assigned Index No. 59629/2018 (the "**State Court Action**").

**Business Finland's Operations**

7.      To promote Business Finland's operations, it obtained all of its funding from its parent company in Finland. Business Finland's process to obtain funding from the parent organization involved preparation of a budget and then submissions of periodic funding requests.

Once approved, Business Finland's parent company would then transfer the requested funds into Business Finland's bank accounts.

8. After these transfers, Business Finland's parent company from time to time sought from its U.S. subsidiary the supporting bank statements to audit Business Finland's use of the funds. Providing the necessary documentation was part of the Debtor's job and, accordingly, the Debtor would send what she portrayed to be true and accurate copies of Business Finland's bank statements showing use of the funds previously requested for Business Finland's business and expenses. However, the Debtor did not send true and accurate copies of Business Finland's bank statements. She instead created and then sent fraudulent bank statements that hid her theft of Business Finland's assets from its bank accounts.

9. The information the Debtor sent in response to the audits was not some mere spreadsheet or summary. Instead, the Debtor would print Chase bank's logo onto documents that contained falsified transaction details to create something that appeared to be actual Chase bank statements, although they contained bogus transaction details that concealed her wrongdoing. When those forged documents were sent by the Debtor electronically to Business Finland's parent company, they looked genuine. No one in the office of the parent company had any reason to suspect that the Debtor had sent them anything different from what they requested.

10. The Debtor siphoned millions of dollars from Business Finland's bank account. Business Finland's review of its unaltered books and records and documents produced in the State Court Action revealed that between 2011-2017, the Debtor stole more than $4.8 million from Business Finland. The below chart shows the net amounts of money the Debtor took from Business Finland without authorization:

| Year | Net Amount Debtor Stole From Business Finland |
|---|---|
| 2011 | $329,523.77 |
| 2012 | $642,034.61 |
| 2013 | $648,618.64 |
| 2014 | $651,109.20 |
| 2015 | $1,086,970.46 |
| 2016 | $938,644.67 |
| 2017 | $523,880.31 |
| **Total:** | **$4,820,781.63** |

11. By way of example, even though the Debtor's annual salary peaked at around $85,000 and her husband, Ronald Colangelo (the "**Husband**") had an annual income of approximately $30,000, the Debtor took a family vacation to southern France at a cost to Business Finland of well over $100,000 in the summer of 2014.

12. Additionally, the Debtor and her family spent more than $85,000 in connection with their membership at Hampshire Country Club between 2013-2018, which they paid for with Business Finland's funds. This country club membership served no business purpose for Business Finland.

13. Moreover, the bank records and testimony establish that in 2015 and 2016, the Debtor spent $38,118.13 on a pearl necklace, bracelet, and earrings for the Debtor, and her Husband purchased a Rolex using the Debtor's American Express account, all of which were paid for using Business Finland's money in its Chase bank account.

14. In addition, the Debtor took money from Business Finland in other ways, including by transferring funds directly into her personal bank account, writing herself checks, and making cash withdrawals from Business Finland's Chase bank account.

15. Based on Business Finland's review of books and records and documents produced

4

in the State Court Action, and testimony provided the Debtor, she used hundreds of thousands of dollars from Business Finland to pay for renovations to the her residence located at 66 Wilson Drive, New Rochelle, New York 10801 (the "**Residence**"), including: (i) added a bedroom and bathroom to the second floor to the Residence, (ii) changed the roof profile of the Residence from a cape-style house to a colonial-style house, (iii) updated the plumbing in the Residence, (iv) installed new hardwood flooring on the first and second floors, (v) installed new siding on their Residence, (vi) repainted the interior of the Residence, (vii) updated the kitchen, which included hardwood floors, granite counters, a new stove, and a new refrigerator, (viii) installed a gas fireplace, (ix) installed a gas generator, (x) installed fencing, (xi) installed stonework, (xii) installed new garage doors and cabinets in the garage, and (xiii) replaced most of the windows in the Residence.

16. Based on Business Finland's review of books and records and documents produced in the State Court Action, the Debtor paid for improvements to the Residence by: (i) using the Debtor's American Express credit card, and (ii) writing checks from her Husband's company Blacklabrador.com Inc. ("**Black Labrador**"). However, the money to pay American Express and to fund Black Labrador came from Business Finland's Chase Account.

17. To hide her theft, the Debtor submitted falsified bank statements to the accounting department in Finland, and admitted under oath that the statements she provided were not the actual bank statements from Business Finland's Chase bank account.

18. The transaction information contained on the "sham" Chase bank statements do not align with the genuine Chae bank statements in at least two significant ways. First, the sham account statements omit material transactions, like payments to the Debtor's American Express

5

account. The second significant discrepancy between the genuine Chase bank statements and the "sham" Chase bank statements are the amounts paid as Business Finland's operating expenses, like inputting fictious payroll debits.

19. In the spring of 2017, Business Finland began to suspect that the Debtor had misappropriated its funds. Following a forensic accounting investigation that began at the end of 2017, Business Finland learned of the Debtor's activities, and terminated her employment.

20. After the discovery of the Debtor's theft of Business Finland's assets, Business Finland filed the State Court Action and thereafter conducted discovery and took depositions of the Debtor. Based on the documentary evidence and the testimony of the Debtor and her spouse, Business Finland filed a motion for partial summary judgment against the Debtor on its first cause of action faithless servant and fifth cause of action for imposition of a constructive trust. On December 21, 2020, a Decision and Order granting Business Finland's summary judgment motion was entered in the State Court Action, a copy of which is annexed hereto as Exhibit A (the "**Decision & Order**").

21. In the Decision & Order, the Court found a "persistent pattern of disloyalty throughout [the Debtor's] employment with [Business Finland]. [The Debtor] has failed to rebut [Business Finland] prima facie showing that she misappropriated funds." As a result, the Court awarded judgment in favor of Business Finland in the amount of $522,732.79.

22. In addition, in the Decision & Order, the Court found "that [Business Finland] demonstrated prima facie entitlement to the imposition of a constructive trust by establishing that the signatory power entrusted by [Business Finland] to [the Debtor] was used by [the Debtor] to divert funds from [Business Finland] Chase account and that those funds were improperly used to

pay for significant renovations to the [Residence]." As a result, the Court imposed a constructive trust against the Residence in favor of Business Finland.

23. On March 16, 2021, an Interim Judgment was entered in favor of Business Finland against the Debtor in the amount of $522,732.79, a copy of which is annexed hereto as Exhibit B (the "**Judgment**").

24. The State Court Action scheduled a trial to determine Business Finland's remaining causes of action against the Debtor and her Husband for May 15, 2023.

25. However, on May 9, 2023 (the "**Filing Date**"), the Debtor filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code (the "**Chapter 7 Case**"), thereby staying the State Court Action and scheduled trial, and filed her Schedules of Assets and Liabilities and Statement of Financial Affairs and related documents (the "**Schedules**").

26. On June 15, 2023, the Debtor attended the 341(a) Meeting of Creditors (the "**341 Meeting**") where she was examined by the chapter 7 trustee, Howard Magaliff (the "**Chapter 7 Trustee**").

27. The Debtor claims not to own any jewelry, and none is listed on her Schedules. However, that is easily refuted. The Debtor's American Express statement shows a charge in the amount of $38,118.13 at Wilson & Son in Scarsdale, New York which the Debtor testified (in connection with the State Court Action) was for the purchase of a pearl necklace, bracelet, and earrings for herself, and that the next year her Husband treated himself to a Rolex using the Debtor's American Express account.

28. Given the Debtor's propensity for fraud and theft, her history of lack of candor in judicial proceedings, and the amount of money that the Debtor misappropriated from Business

Finland, it is believed that the Debtor is actively concealing cash and assets from this Court, the Trustee, Business Finland, her other creditors, and other parties in interest.[1]

29. The Debtor's Schedules reflect that the Debtor does not have liquid assets, except for the education IRA account in the amount of $2,000. The Debtor's only monthly income is from social security in the amount of $2,034.00, and "family support" in the amount of $2,090, totaling $4,124. Even though the Debtor has no cash reserves, she testified at the 341 Meeting that she is current on her monthly expenses, which include the mortgage payment ($2,280), utilities, food and clothing for her and her family, and the private school tuition for her four (4) children at the French-American School of New York at $12,156.66 per month![2]

30. While the Debtor testified at the 341 Meeting that her husband paid for these expenses, she claims not to know anything about his assets or his income. This testimony is not credible given that the Debtor was so intimately involved in her husband's finances that she facilitated transfers of Business Finland's money to his company, Black Labrador.

31. Further, the Debtor testified that she paid her attorney to file this Chapter 7 Case with cash and pays all of her expenses with cash.

32. Business Finland believes that the Debtor has significant cash that she did not disclose on the Schedules and is instead hiding the cash from her creditors and this Court, and further believes that the Debtor has transferred all of her assets to her Husband, Black Labrador, or other subsequent entities.

---

[1] As an example of the Debtor's untrustworthiness in judicial proceedings, she has gone so far as to testify under oath in her deposition that she as the owner of her employer company, knowing it was false and without any real-world support for that testimony.

[2] The annual tuition at the French-American School of New York is $36,470 per student, so the total annual tuition for 4 children is $145,880. *See*, https://www.fasny.org/admissions/tuition

## RELIEF REQUESTED AND BASIS FOR RELIEF

33. By this Application, Business Finland seeks entry of an order directing the production of documents seeking information as it relates to the property and assets of the Debtor, and fraudulent conveyances and transfers of the Debtor's assets from the parties below (collectively, the "**Examinees**"):

   i. Debtor;
   ii. Ronald Colangelo, the Debtor's Husband;
   iii. Blacklabrador.com, Inc.
   iv. Equifax;
   v. Any business or entities the Husband and/or Black Labrador may have an interest in;
   vi. Husband's credit institutions (to be determined from Husband, and/or Black Labrador, and/or Equifax response to FRBP 2004 subpoena);
   vii. Husband's banking institutions (to be determined from Husband, and/or Black Labrador, and/or Equifax response to FRBP 2004 subpoena);
   viii. Black Labrador's banking institutions (to be determined from Husband, and/or Black Labrador, and/or Equifax response to FRBP 2004 subpoena); and
   ix. Black Labrador's credit institutions (to be determined from Husband, and/or Black Labrador, and/or Equifax response to FRBP 2004 subpoena).

34. In addition, Business Finland seeks to schedule an examination of the Examinees, as needed and requested by Business Finland.

35. Bankruptcy Rule 2004 provides that "[o]n motion of any party in interest, the court may order the examination of any entity." Fed. R. Bankr. P. 2004(a). Bankruptcy Rule 2004(c) further authorizes the Court to Order the production of documents. Fed. R. Bankr. P. 2004(c). Examinations under Bankruptcy Rule 2004 include within their scope, *inter alia*, any matter that may relate to the property and assets of the estate; the financial condition of the debtor; and any matter that may affect the administration of a debtor's estate. *See* Fed. R. Bankr. P. 2004(b); *see also In re Reconton Corp.*, 307 B.R. 751, 755 (Bankr. S.D.N.Y. 2004) ("The purpose of a Rule 2004 inquiry examination is to assist a party in interest in determining the nature and extent of the

9

bankruptcy estate, revealing assets, examining transactions and assessing whether wrongdoing has occurred.").

36. Courts have consistently recognized the extraordinarily broad scope of an examination under Bankruptcy Rule 2004. *See In re Recoton Corp.*, 307 B.R. at 755. ("The scope of a Rule 2004 examination is very broad, broader even than discovery under the Federal Rules of Civil Procedure"). The scope of inquiry is extraordinarily broad because "[t]he purpose of a Rule 2004 examination is to assist a party in interest in determining the nature and extent of the bankruptcy estate, revealing assets, examining transactions and assessing whether wrongdoing has occurred." *Id.*

37. Business Finland is a scheduled creditor and party in interest in this case and "may raise and may appear and be heard on any issue in a case under this chapter." 11 U.S.C. § 1109(b)).

38. Business Finland seeks documents related to the property and assets of the Debtor, the financial condition of the Debtor and fraudulent conveyance of assets. Accordingly, the examination and requested documents are within the permissible scope of a Rule 2004 examination.

39. Annexed hereto as <u>Exhibit A</u> is the proposed Order that Business Finland seeks entry of, which directs the production of documents from the Examinees and the scheduling of an examination of the Examinees.

40. In light of the facts and authorities set forth above, Business Finland submits that its request for the production of documents and an examination of the Examinees pursuant to Bankruptcy Rule 2004 is well founded and, in light of this bankruptcy case, warranted. Accordingly, Business Finland respectfully requests the proposed Order be entered.

## CONCLUSION

41. For all of the foregoing reasons, the Debtor respectfully requests entry of an order directing the Examinees to respond to the subpoena and appear for an examination, together with such other and further relief as may be appropriate under the circumstances.

Dated: Scarsdale, New York
       July 25, 2023

KIRBY AISNER & CURLEY, LLP
*Attorneys for Business Finland, Inc.*
700 Post Road, Suite 237
Scarsdale, New York 10583
(914) 401-9500

By: */s/ Julie Cvek Curley*
     Julie Cvek Curley