UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------x

In re:                                              :
                                                    :        Chapter 7
JAANA COLANGELO,                                     :        Case No. 23-22355 (SHL)
                                                    :
                          Debtor.                   :

---------------------------------------------------------------x

### ORDER AUTHORIZING THE SALE OF REAL PROPERTY
### AT 66 WILSON DRIVE, NEW ROCHELLE, NEW YORK
### FREE AND CLEAR OF LIENS AND INTERESTS PURSUANT
### TO SECTIONS 363(b) AND (f) OF THE BANKRUPTCY CODE

Upon the motion dated May 13, 2024 (the "Motion") of Howard P. Magaliff, the

chapter 7 trustee (the "Trustee") of the estate of Jaana Colangelo (the "Debtor"), by his attorneys

R3M Law, LLP, for an order pursuant to sections 363(b) and (f) of the Bankruptcy Code, title

11, United States Code (the "Bankruptcy Code"), Rule 6004 of the Federal Rules of Bankruptcy

Procedure (the "Bankruptcy Rules") and Local Bankruptcy Rule 6004-1 authorizing him to sell

the real property located at 66 Wilson Drive, New Rochelle, NY (the "Property") to Sergio Dif-

fillipi and Kimberly Neal (the "Buyers") free and clear of liens and interests, with liens and in-

terests to attach to the proceeds; and due and sufficient notice of the Motion having been given;

and being that a sale of the Property is in the best interests of the estate and its creditors, and par-

ties in interest; and the Trustee having filed the Report of Sale of MYC & Associates, Inc. [doc.

54]; and a hearing (the "Sale Hearing") having been held on June 24, 2024, and the Court having

considered the arguments of all counsel and interested parties wishing to be heard who appeared

at the Sale Hearing, and the Court having found and concluded that the sale of the Property at

this time is in the best interests of the estate and its creditors; and there being no objections to the

Motion, and no adverse interest appearing, and the Debtor having filed a letter with Court [doc.

55] and stated on the record that she has not fully vacated the Property and that she needs addi-

tional time to vacate the Property prior to the closing on the Property, and good and sufficient cause existing for the relief requested, the Court hereby **FINDS** and **CONCLUDES** that:

 A. Notice of the Motion and the Sale Hearing was good, adequate and sufficient, and all parties in interest were given the opportunity to object to the proposed sale and be heard.

 B. The Property was adequately marketed.

 C. Closing with the Buyers provides fair and reasonable consideration to the estate.

 D. The Trustee has demonstrated sound and prudent business judgment in deciding to sell the Property to the Buyers.  The proposed sale of the Property is in the best interests of the Debtors' estate and its creditors.

 E. Ronald Colangelo, as the 50% joint owner of the Property with the Debtor, has consented to the sale of his interest pursuant to section 363(h) of the Bankruptcy Code, as evidenced by the stipulation "so ordered" on March 12, 2024 [doc. 42] (the "R. Colangelo Stipulation").

 F. Sale of the Property pursuant to section 363(f) of the Bankruptcy Code is appropriate, because the Trustee has satisfied one or more of the requirements of section 363(f) of the Bankruptcy Code.

 G. No objections to the Motion were filed or interposed.

 H. Waiver of the 14-day automatic stay under Bankruptcy Rule 6004(h) is appropriate under the circumstances.

 Based upon the foregoing findings of fact and conclusions of law, it is hereby **ORDERED** that:

 1. The Motion is approved as set forth herein.

4863-5981-0763, v. 3

2.      The Contract of Sale attached as <u>Exhibit 1</u> to the Motion is approved.

3.      Pursuant to 11 U.S.C. §§ 363(b) and (f), the Trustee be, and he hereby is authorized to sell the Property to the Buyers free and clear of all liens, claims and interests of entities other than the estate of whatever kind or nature, with such liens, claims, interests and encumbrances, if any, to attach to the proceeds of the sale in such order and priority as they existed immediately prior to the date of the sale.

4.      All objections to the Motion and the sale of the Property, to the extent not withdrawn or resolved, are denied in all respects.

5.      The sale of the Property is exempt from the automatic stay requirement of Bankruptcy Rule 6004(h).

6.      The Trustee is authorized to execute all documents and take all actions necessary to close on the sale of the Property in accordance with the Contract of Sale and this Order.

7.      Ronald Colangelo is directed to execute all documents and take all actions necessary to close on the sale of the Property in accordance with the Contract of Sale and this Order.

8.      The Trustee is authorized but not directed to pay all closing costs, fees, and expenses of the sale, including without limitation the broker commission and fees of MYC & Associates, Inc. ("<u>MYC</u>") as provided in the Order authorizing MYC's retention [doc 46], the first mortgage and open real estate taxes.

9.      The Trustee is directed to retain the remaining proceeds of the sale including 50% of the net sale proceeds pursuant to the R. Colangelo Stipulation until further order of the Court.

4863-5981-0763, v. 3

10.     The Trustee shall close on the sale of the Property no sooner than July 20, 2024.  The Debtor is directed to vacate the Property no later than July 19, 2024, and to continue to allow the Buyers and their professionals entry to the Property prior to closing upon reasonable notice.

11.     Pursuant to 11 U.S.C. § 363(m), if any or all of the provisions of this Order are reversed, modified, vacated or stayed by subsequent order of this Court or any other court, such reversal, modification, vacatur or stay shall not affect the validity and the enforceability of any obligation, debt or claim incurred or granted or sale made pursuant to this Order, and notwithstanding any stay, reversal, modification or vacatur of this Order, any sale or other obligation of the parties pursuant to this Order arising prior to the effective date of any such stay, reversal, modification or vacatur shall be governed in all respects by the original provisions of this Order.

12.     This Court shall retain jurisdiction with respect to any dispute under this Order.

Dated:  White Plains, New York
        July 12, 2024

                                        _/s/ Sean H. Lane_
                                        Hon. Sean H. Lane
                                        United States Bankruptcy Judge

4

4863-5981-0763, v. 3

# Exhibit 1

DocuSign Envelope ID: 6582FCF9-7808-4026-A3C0-1983EAC1093F

RESIDENTIAL CONTRACT OF SALE (2000)
This form was prepared by the Real Property Law Section of the New York State Bar Association
and the Committee on Real Property Law of the Association of the Bar of the City of New York.

*Warning: No representation is made that this form of contract for the sale and purchase of real estate complies with Section 5-702 of the General Obligations Law ("Plain Language Law").*

## CONSULT YOUR LAWYER BEFORE SIGNING THIS AGREEMENT NOTE:

### FIRE AND CASUALTY LOSSES AND CONDEMNATION

This contract form does not provide for what happens in the event of fire, or other casualty loss or condemnation before the title closing. Unless different provision is made in this contract, Section 5-1311 of the General Obligations Law will apply. One part of that law makes a Purchaser responsible for fire and casualty loss upon taking possession of the Premises before the title closing.

### Residential Contract of Sale

Contract of Sale made as of  April    , 2024                                          between Howard P. Magaliff, Chapter 7 Trustee of Jaana Colangelo
Address: c/o R3M Law, LLP, 335 Madison Avenue, 9th Floor, New York, New York 10017
__ Social Security Number/ Fed. I.D. No(s): ___       hereinafter called **"Seller"**
And Sergio Diffilippi and Kimberly Neal, his wife
Address:
Social Security Number/Fed. I.D. No(s) ___              hereinafter called **"Purchaser".**

The parties hereby agree as follows:

1.    **Premises**.  Seller shall sell and convey and Purchaser shall purchase the property, together with all buildings and improvements thereon (collectively the **"Premises"**), more fully described in "Schedule A", annexed hereto and made a part hereof and also known as: Street Address: 66 Wilson Drive, New Rochelle, New York
Tax Map Designation: Sec 1: --Block 315 –Lot 388 f/k/a 389 and 390.

Together with Seller's ownership and rights, if any, to land lying in the bed of any street or highway, opened or proposed, adjoining the Premises to the center line thereof, including any right of Seller to any unpaid award by reason of any taking by condemnation and/or for any damage to the Premises by reason of change of grade of any street or highway. Seller shall deliver at no additional cost to Purchaser, at Closing (as hereinafter defined), or thereafter, on demand, any documents that Purchaser may reasonably require for the conveyance of such title and the assignment and collection of such award or damages.

Legal title to the Property is held in the name of Ronald Colangelo (the "Husband") and Jaana Colangelo, his wife. By his execution of the joinder to this contract, the Husband hereby consents to the sale of the Premises for all purposes of Section 363(h) of the Bankruptcy Code, submits to the jurisdiction of the Bankruptcy Court for all purposes of this contract and the transaction contemplated hereby, and agrees to be bound to all the terms, covenants and conditions of this contract as a party seller.

2.    **Personal Property**. This sale also includes all fixtures and articles of personal property now attached or appurtenant to the Premises, unless specifically excluded below. Subject to the approval of the Bankruptcy Court, Seller shall have the right at Closing to convey the same, free and clear of all liens and encumbrances. They include (but only to the extent currently located on the Premises) plumbing, heating, lighting (including all light fixtures and chandeliers) and cooking fixtures, bathroom and kitchen cabinets and counters, mantels, door mirrors, switch plates and door hardware, kitchen appliances (including any dishwasher, microwave, wall oven and refrigerator), washer and dryer, garage door opener, air conditioning equipment and installations, wall to wall carpeting, and built-ins, all to the extent not excluded below.

Excluded from this sale are furniture and household furnishings.

3.    **Purchase Price**. The purchase price is Nine Hundred Sixty Thousand Dollars ($960,000), payable as follows:

- (a) heretofore received by Seller from Purchaser and to be held in escrow pursuant to paragraph 6 of this contract (the "**Downpayment**"):
  $ 96,000.

- (b) balance at Closing in accordance with paragraph 7:
  $ 864,000.

4.    **Existing Mortgage**. Intentionally Omitted

5.    **Purchase Money Mortgage**. Intentionally Omitted

6.    **Downpayment in Escrow**. (a) Seller's attorney ("**Escrowee**") hereby acknowledges receipt of the Downpayment and agrees to hold the Downpayment in escrow in a segregated bank account at J. P. Morgan Chase Bank, N.A., address: 390 Madison Avenue, New York 10017, until Closing or sooner termination of this contract and shall pay over or apply the Downpayment in accordance with the terms of this paragraph. Escrowee shall hold the Downpayment in a non-interest bearing account for the benefit of the parties. The Downpayment shall be placed in an IOLA account or as otherwise permitted or required by law. The Social Security or Federal Identification numbers of the parties shall be furnished to Escrowee upon request. At Closing, the Downpayment shall be paid by Escrowee to Seller. If for any reason Closing does not occur and either party gives Notice (as defined in paragraph 24) to Escrowee demanding payment of the Downpayment, Escrowee shall give prompt Notice to the other party of such demand. If Escrowee does not receive Notice of objection from such other party to the

DocuSign Envelope ID: 6582FCF9-7808-4026-A3C0-1983EAC1093F

proposed payment within 10 business days after the giving of such Notice, Escrowee is hereby authorized and directed to make such payment. If Escrowee does not receive such Notice of objection within such 10 day period or if for any other reason Escrowee in good faith shall elect not to make such payment, Escrowee shall continue to hold such amount until otherwise directed by Notice from the parties to this contract or a final, nonappealable judgment, order or decree of a court. However, Escrowee shall have the right at any time to deposit the Downpayment and the interest thereon with the clerk of a court in the county in which the Premises are located and shall give Notice of such deposit to Seller and Purchaser. Upon such deposit or other disbursement in accordance with the terms of this paragraph, Escrowee shall be relieved and discharged of all further obligations and responsibilities hereunder.

(b)    The parties acknowledge that Escrowee is acting solely as a stakeholder at their request and for their convenience and that Escrowee shall not be liable to either party for any act or omission on its part unless taken or suffered in bad faith or in willful disregard of this contract or involving gross negligence on the part of Escrowee. Seller and Purchaser jointly and severally (with right of contribution) agree to defend (by attorneys selected by Escrowee), indemnify and hold Escrowee harmless from and against all costs, claims and expenses (including reasonable attorneys' fees) incurred in connection with the performance of Escrowee's duties hereunder, except with respect to actions or omissions taken or suffered by Escrowee in bad faith or in willful disregard of this contract or involving gross negligence on the part of Escrowee. Purchaser acknowledges that Seller, in his individual capacity, is a member of the law firm, which is acting as Escrowee.

(c)    Escrowee may act or refrain from acting in respect of any matter referred to herein in full reliance upon and with the advice of counsel which may be selected by it (including any member of its firm) and shall be fully protected in so acting or refraining from action upon the advice of such counsel.

(d)    Escrowee acknowledges receipt of the Downpayment by check subject to collection and Escrowee's agreement to the provisions of this paragraph by signing in the place indicated on the signature page of this contract.

(e)    Escrowee or any member of its firm shall be permitted to act as counsel for Seller in any dispute as to the disbursement of the Downpayment or any other dispute between the parties whether or not Escrowee is in possession of the Downpayment and continues to act as Escrowee.

7.    **Acceptable Funds**. All money payable under this contract, unless otherwise specified, shall be paid by:

(a)    Cash, but not over $1,000.00;

(b)    Good certified check of Purchaser drawn on or official check issued by any bank, savings bank, trust company or savings and loan association having a banking office in the State of New York, unendorsed and payable to the order of Seller, wire transfer of federal

DocuSign Envelope ID: 6582FCF9-7808-4026-A3C0-1983EAC1093F

funds or as Seller may otherwise direct upon reasonable prior notice (by telephone or otherwise) to Purchaser;

(c)     As to money other than the purchase price payable to Seller at Closing, uncertified check of Purchaser up to the amount of $ 1,000.00; and

(d)     As otherwise agreed to in writing by Seller or Seller's attorney.

8.     **Mortgage Commitment Contingency**. Intentionally Omitted.

9.     **Permitted Exceptions**. The Premises are sold and shall be conveyed **"AS IS"** and **"WHERE IS"**, **"WITH ALL FAULTS"**, without any representations, covenants, guarantees or warranties of any kind or nature whatsoever, and subject to:

(a) any state of facts that an accurate survey would show;

(b) any covenants, restrictions, conditions, easements and agreements of record;

(c) any state of facts a physical inspection may show;

(d) any building or zoning or subdivision ordinances or wetlands designations or other applicable municipal regulations and violations thereof;

(e) any damage or destruction between the date of the contract and the date of the Closing;

(f) all deed restrictions of record;

(h) all governmental violations of whatever kind or nature;

(i) consents for the erection of any structures on, under or above any streets on which the Premises abut:

(j) minor encroachments of stoops, areas, cellar steps, trim and cornices, if any, upon any street or highway; and

(k) real estate taxes that are a lien, but are not yet due and payable;

10.     **Governmental Violations and Orders**. To the extent that there shall exist, as of the date of Closing, any violations of law or municipal ordinances, orders or requirements noted or issued by any governmental department having authority as to lands, housing, buildings, fire, health, environmental and labor conditions affecting the Premises at Closing (collectively, **"Violations"),** Seller shall have no obligation whatsoever to remedy any such Violations and the

Premises shall be conveyed subject to all such Violations, provided, however, that if a fine or charge has been levied or assessed in connection with any such Violation, Seller shall be responsible to pay such fine or charge. Seller shall furnish Purchaser with any authorizations necessary to make the searches that could disclose these matters.

11. **Seller's Representations**. (a) Seller represents and warrants to Purchaser that:

(i) Upon approval of the Bankruptcy Court, Seller shall have the full right, power and authority to sell, convey and transfer the Premises in accordance with the terms of this contract;

(ii) Seller is not a "foreign person", as that term is defined for purposes of the Foreign Investment in Real Property Tax Act, Internal Revenue Code ("IRC") Section 1445, as amended, and the regulations promulgated thereunder (collectively "FIRPTA");

(iii) Seller has been known by no other name for the past ten years.

(b) Seller covenants and warrants that all of the representations and warranties set forth in this contract shall be true and correct at Closing.

(c) Except as otherwise expressly set forth in this contract, none of Seller's covenants, representations, warranties or other obligations contained in this contract shall survive Closing.

12. **Condition of Property**. Purchaser acknowledges and represents that Purchaser is fully aware of the physical condition and state of repair of the Premises and of all other property included in this sale, based on Purchaser's own inspection and investigation thereof, and that Purchaser is entering into this contract based solely upon such inspection and investigation and not upon any information, data, statements or representations, written or oral, as to the physical condition, state of repair, use, cost of operation or any other matter related to the Premises or the other property included in the sale, given or made by Seller or its representatives, and shall accept the same "as is" and "where is", "with all faults" in their then condition and state of repair at the date of Closing. Purchaser and its authorized representatives shall have the right, at reasonable times and upon reasonable notice (by telephone or otherwise) to Seller, to inspect the Premises before Closing.

13. **Insurable Title**. Seller shall give and Purchaser shall accept such title as a title company selected by Purchaser and licensed in the State of New York shall be willing to approve and insure in accordance with its standard form of title policy approved by the New York State Insurance Department, subject only to the matters provided for in this contract.

14. **Closing, Deed and Title**. **"Closing"** means the settlement of the obligations of Seller and Purchaser to each other under this contract, including the payment of the purchase price to Seller, and the delivery to Purchaser of a trustee's deed in proper statutory short form for

record, duly executed and acknowledged, so as to convey to Purchaser fee simple title to the Premises, free of all encumbrances, except as otherwise herein stated.

15.   **Closing Date and Place**. Closing shall take place at the office of the attorneys for Seller or via an escrow closing or at such other place as the parties may agree, at 10:00 AM o'clock on that date which is thirty (30) days after the entry of an order of the Bankruptcy Court approving the sale of the Premises to Purchaser, all as more particularly provided in paragraph 30 hereof with respect to the entry of such an order.

16. **Conditions to Closing**. This contract and Purchaser's obligation to purchase the Premises are also subject to and conditioned upon the fulfillment of the following conditions precedent:

(a)   The accuracy, as of the date of Closing, of the representations and warranties of Seller made in this contract.

(b)   The delivery by Seller to Purchaser of a certificate stating that Seller is not a foreign person, which certificate shall be in the form then required by FIRPTA or a withholding certificate from the Internal Revenue Service. If Seller fails to deliver the aforesaid certificate or if Purchaser is not entitled under FIRPTA to rely on such certificate, Purchaser shall deduct and withhold from the purchase price a sum equal to 15% thereof (or any lesser amount permitted by law) and shall at Closing remit the withheld amount with the required forms to the Internal Revenue Service.

(c)   The delivery of the Premises and all building(s) and improvements comprising a part thereof in broom clean condition, vacant and free of leases or tenancies, together with keys to the Premises. In no event shall Seller be liable for the condition and state of repair and operability of any plumbing (including water supply and septic systems, if any), heating or air conditioning, if any, electrical and mechanical systems, equipment and machinery in the building(s) located on the Premises nor shall Seller be responsible to place any of the foregoing in working order as of the date of Closing.

If the Premises are a one-or-two family house, delivery by the parties at Closing of affidavits in compliance with state and local law requirements to the effect that there is installed in the Premises a smoke detecting alarm device or devices.

(d)   The delivery by the parties of any other affidavits required as a condition of recording the deed.

(e)   The assignment to, and assumption by, Purchaser of a certain solar system lease agreement (the "Lease Agreement") dated May 24, 2021 by and between Vivant Solar Developer, LLC ("Vivant") and Ron Colangelo, a copy of which Lease Agreement has been provided to Purchaser. Purchaser agrees to comply, prior to Closing, with the requirements of the Lease Agreement with respect to the assignment of the lessee's interest thereunder to Purchaser.

17.   **Deed Transfer and Recording Taxes**. At Closing, certified or official bank

DocuSign Envelope ID: 6582FCF9-7808-4026-A3C0-1983EAC1093F   Pg 12 of 28

checks payable to the order of the appropriate State, City or County officer in the amount of any applicable transfer and/or recording tax payable by reason of the delivery or recording of the deed or mortgage, if any, shall be delivered by the party required by this contract to pay such transfer and/or recording tax, together with any required tax returns duly executed and sworn to, and such party shall cause any such checks and returns to be delivered to the appropriate officer promptly after Closing. The obligation to pay any additional tax or deficiency and any interest or penalties thereon shall survive Closing.

18.   **Apportionments and Other Adjustments; Water Meter and Installment Assessment; Assignment and Assumption of Contract**. (a) To the extent applicable, the following shall be apportioned as of midnight of the day before the day of Closing: (i) taxes and water charges, (ii) fuel oil, (iii) gas and electricity, (iv) monthly charges under the Lease Agreement.

(b)   If Closing shall occur before a new tax rate is fixed, the apportionment of taxes shall be upon the basis of the tax rate for the immediately preceding fiscal period applied to the latest assessed valuation.

(c)   If there is a water meter on the Premises, Seller shall furnish a final reading to a date not more than 30 days before Closing and the fixed meter charge and sewer rent, if any, shall be apportioned on the basis of such reading.

(d)   If at the date of Closing the Premises are affected by an assessment which is or may become payable in annual installments, and the first installment is then a lien, or has been paid, then for the purposes of this contract all the unpaid installments shall be considered due and shall be paid by Seller at or prior to Closing.

(e)   Any errors or omissions in computing apportionments or other adjustments at Closing shall be corrected within a reasonable time following Closing. This subparagraph shall survive Closing.

19.   **Allowance for Unpaid Taxes, etc**. Seller has the option to credit Purchaser as an adjustment to the purchase price with the amount of any unpaid taxes, assessments, water charges and sewer rents, together with any interest and penalties thereon to a date not less than five business days after Closing, provided that official bills therefor computed to said date are produced at Closing.

20.   **Use of Purchase Price to Remove Encumbrances**. If at Closing there are other liens or encumbrances that Seller is obligated to pay or discharge, Seller may use any portion of the cash balance of the purchase price to pay or discharge them, provided Seller shall simultaneously deliver to Purchaser at Closing instruments in recordable form and sufficient to satisfy such liens or encumbrances of record, together with the cost of recording or filing said instruments. As an alternative Seller may deposit sufficient monies with the title insurance company employed by Purchaser acceptable to and required by it to assure their discharge, but only if the title insurance company will insure Purchaser's title clear of the matters or insure against their enforcement out of the Premises. Upon reasonable prior notice (by telephone or

otherwise), Purchaser shall provide separate certified or official bank checks as requested to assist in clearing up these matters.

21.    **Title Examination; Seller's Inability to Convey; Limitations of Liability**. (a) Purchaser shall order an examination of title in respect of the Premises from a title company licensed or authorized to issue title insurance by the New York State Insurance Department or any agent for such title company promptly after the execution of this contract. Purchaser shall cause a copy of the title report and of any additions thereto to be delivered to the attorney(s) for Seller promptly after receipt thereof.

(b)    (i) If at the date of Closing Seller is unable to transfer title to Purchaser in accordance with this contract, or Purchaser has other valid grounds for refusing to close, whether by reason of liens, encumbrances or other objections to title or otherwise (herein collectively called **"Defects"**), other than those subject to which Purchaser is obligated to accept title hereunder or which Purchaser may have waived and other than those which Seller has herein expressly agreed to remove, remedy or discharge and if Purchaser shall be unwilling to waive the same and to close title without abatement of the purchase price, then, except as hereinafter set forth, Seller shall have the right, at Seller's sole election, either to take such action as Seller may deem advisable to remove, remedy, discharge or comply with such Defects or to cancel this contract; (ii) if Seller elects to take action to remove, remedy or comply with such Defects, Seller shall be entitled from time to time, upon Notice to Purchaser, to adjourn the date for Closing hereunder for a period or periods not exceeding 60 days in the aggregate, and the date for Closing shall be adjourned to a date specified by Seller not beyond such period. If for any reason whatsoever, Seller shall not have succeeded in removing, remedying or complying with Defects at the expiration of such adjournment(s), and if Purchaser shall still be unwilling to waive the same and to close title without abatement of the purchase price, then either party may cancel this contract by Notice to the other given within 10 days after such adjourned date; (iii) notwithstanding the foregoing, any existing mortgage (unless this sale is subject to the same) and any matter created by Seller after the date hereof shall be released, discharged or otherwise cured by Seller at or prior to Closing.

(c)    If this contract is cancelled pursuant to its terms, other than as a result of Purchaser's default, this contract shall terminate and come to an end, and neither party shall have any further rights, obligations or liabilities against or to the other hereunder or otherwise, except that Seller shall promptly refund or cause the Escrowee to refund the Downpayment to Purchaser.

22.    **Affidavit as to Judgments, Bankruptcies, etc**. If a title examination discloses judgments, bankruptcies or other returns against persons having names the same as or similar to that of Seller, Seller shall deliver an affidavit at Closing showing that they are not against Seller.

23.    **Defaults and Remedies**. (a) If Purchaser willfully defaults hereunder, Seller's sole remedy shall be to receive and retain the Downpayment as liquidated damages, it being agreed that Seller's damages in case of Purchaser's default might be impossible to ascertain and that the Downpayment constitutes a fair and reasonable amount of damages under the circumstances and is not a penalty.

(b) If Seller willfully defaults hereunder, Purchaser shall have, as Purchaser's sole remedy, the remedy of specific performance.

24.    **Notices**. Any notice or other communication (**"Notice"**) shall be in writing and either

(a)    sent by either of the parties hereto or by their respective attorneys who are hereby authorized to do so on their behalf or by the Escrowee, by registered or certified mail, postage prepaid, or

(b)    delivered in person or by overnight courier, with receipt acknowledged, to the respective addresses given in this contract for the party and the Escrowee, to whom the Notice is to be given, or to such other address as such party or Escrowee shall hereafter designate by Notice given to the other party or parties and the Escrowee pursuant to this paragraph. Each Notice mailed shall be deemed given on the third business day following the date of mailing the same, except that any notice to Escrowee shall be deemed given only upon receipt by Escrowee and each Notice delivered in person or by overnight courier shall be deemed given when delivered, or

(c)    A copy of each notice sent to a party shall also be sent to the party's attorney.  The attorneys for the parties are hereby authorized to give and receive on behalf of their clients all Notices and deliveries.

25.    **No Assignment**. This contract may not be assigned by Purchaser without the prior written consent of Seller in each instance and any purported assignment(s) made without such consent shall be void.

26.    **Broker**. Seller and Purchaser each represents and warrants to the other that it has not dealt with any real estate broker in connection with this sale other than MYC & Associates, Inc. ("MYC") and Kate-Lynn Realty ("KLR"). Seller shall, subject to and in accordance with an order of the Bankruptcy Court, pay MYC any commission earned pursuant to a separate agreement between Seller and MYC. Purchaser shall pay KLR any commission earned pursuant to a separate agreement between Purchaser and KLR. Seller and Purchaser shall indemnify and defend each other against any costs, claims and expenses, including reasonable attorneys' fees, arising out of the breach on their respective parts of any representation or agreement contained in this paragraph. The provisions of this paragraph shall survive Closing or, if Closing does not occur, the termination of this contract.

27.    **Miscellaneous**. (a) All prior understandings, agreements, representations and warranties, oral or written, between Seller and Purchaser are merged in this contract; it completely expresses their full agreement and has been entered into after full investigation, neither party relying upon any statement made by anyone else that is not set forth in this contract.

(b)    Neither this contract nor any provision thereof may be waived, changed or cancelled except in writing. This contract shall also apply to and bind the heirs, distributes, legal

representatives, successors and permitted assigns of the respective parties. The parties hereby authorize their respective attorneys to agree in writing to any changes in dates and time periods provided for in this contract.

(c)    Any singular word or term herein shall also be read as in the plural and the neuter shall include the masculine and feminine gender, whenever the sense of this contract may require it.

(d)    The captions in this contract are for convenience of reference only and in no way define, limit or describe the scope of this contract and shall not be considered in the interpretation of this contract or any provision hereof.

(e)    This contract shall not be binding or effective until duly executed and delivered by Seller and Purchaser.

(f)    Seller and Purchaser shall comply with IRC reporting requirements, if applicable. This subparagraph shall survive Closing.

(g)    Each party shall, at any time and from time to time, execute, acknowledge where appropriate and deliver such further instruments and documents and take such other action as may be reasonably requested by the other in order to carry out the intent and purpose of this contract. This subparagraph shall survive Closing.

(h)    This contract is intended for the exclusive benefit of the parties hereto and, except as otherwise expressly provided herein, shall not be for the benefit of, and shall not create any rights in, or be enforceable by, any other person or entity.

(i)    If applicable, the complete and fully executed disclosure of information on lead-based paint and/or lead-based paint hazards is attached hereto and made a part hereof.

**SEE RIDER ANNEXED HERETO AND MADE A PART HEREOF.**

IN WITNESS WHEREOF, this contract has been duly executed by the parties hereto.

SELLER:

_____

Howard P. Magaliff, Chapter 7 Trustee of Jaana Colangelo

PURCHASER:

Sergio Difilippi
_____
Sergio Difilippi

Kimberly Neal
_____
Kimberly Neal

DocuSign Envelope ID: 6582FCF9-7808-4026-A3C0-1983EAC1093F

### JOINDER

Pursuant to a certain stipulation and order dated March 12, 2024 (the "Order"), a copy of which is attached hereto as Exhibit A, the undersigned, Ronald Colangelo, consented to the sale by the Seller of his interest in the Premises pursuant to Section 363 (h) of the Bankruptcy Code.

By executing this joinder pursuant to and subject to the Order, the undersigned agrees to execute and deliver at the Closing: (i) a quitclaim deed in favor of the Purchaser with respect to the Premises and (ii) such affidavits as may be required by Purchaser's title insurance company in order for it to ensure Purchaser's title to the Premises, including an affidavit of title in customary form and an affidavit that the undersigned has been known by no other name in the past ten (10) years. Nothing contained in paragraph 1 of the Contract wherein the undersigned is referred to as a "party Seller" shall be deemed to impose upon the undersigned any obligation greater than the obligations imposed upon the undersigned pursuant to the Order.

_____
Ronald Colangelo


Address:

69 Fanueuil Place

New Rochelle, NY 10801

DocuSign Envelope ID: 6582FCF9-7808-4026-A3C0-1983EAC1093F

Receipt of the Downpayment is acknowledged and the undersigned agrees to act in accordance with the provisions of paragraph 6 above.

R3M Law, LLP

By: _____
        Escrowee

**SCHEDULE A**

DocuSign Envelope ID: 6582FCF9-7808-4026-A3C0-1983EAC1093F

ALL THAT CERTAIN PLOT, PIECE OR PARCEL OF LAND, SITUATE, LYING AND BEING IN CITY OF NEW ROCHELLE, COUNTY OF WESTCHESTER AND STATE OF NEW YORK, SHOWN AS LOTS 388, 389 AND 390 ON

MAP ENTITLED "SUN HAVEN, A SUBDIVISION IN NEW ROCHELLE, WESTCHESTER COUNTY, NEW YORK," DATED

SEPTEMBER 20, 1924, BY WALTER G. CRAIG, C.E. AND S., AND FILED IN THE OFFICE OF THE COUNTY CLERK,

DIVISION OF LAND RECORDS, FORMERLY REGISTER'S OFFICE, WESTCHESTER COUNTY, NEW YORK ON AUGUST 21, 1925 IN MAP NO. 2876, WHICH LOTS WHEN TAKEN TOGETHER AS ONE PARCEL ARE MORE PARTICULARLY BOUNDED AND DESCRIBED AS FOLLOWS:

BEGINNING AT A POINT ON THE SOUTHERLY SIDE OF EVERGREEN AVENUE WHERE THE SAME IS INTERSECTED BY THE DIVISION LINE BETWEEN LOT NO. 388 AND LOT NUMBER 387;

RUNNING THENCE ALONG SAID DIVISION LINE SOUTH 24° 36' 30" EAST 106.95 FEET TO A POINT ON THE DIVISION LINE BETWEEN LOT NO. 388 AND LOT NO. 369.

RUNNING THENCE ALONG SAID DIVISION LINE AND CONTINUING ALONG THE DIVISION LINES BETWEEN LOT NO. 389, LOT 390 AND LOT 369, NORTH 65° 23' 30" EAST 60 FEET TO A POINT ON THE WESTERLY SIDE OF WILSON DRIVE;

RUNNING THENCE ALONG SAID SIDE OF WILSON DRIVE, NORTH 24° 36' 30" WEST 91.79 FEET TO THE SOUTHERLY END OF A CURVE CONNECTING THE AFORESAID WESTERLY SIDE OF WILSON DRIVE WITH THE SOUTHERLY SIDE OF EVERGREEN AVENUE;

RUNNING THENCE IN A NORTHERLY AND WESTERLY DIRECTION ON A CURVE TO THE LEFT WITH A RADIUS OF 20 FEET A DISTANCE OF 33.90 FEET TO A POINT OF TANGENCY ON THE AFORESAID SOUTHERLY SIDE OF EVERGREEN AVENUE;

RUNNING THENCE ALONG SAID SIDE OF EVERGREEN AVENUE, SOUTH 58° 16' 20" WEST 37.82 FEET TO THE POINT OR PLACE OF BEGINNING.

RIDER TO CONTRACT OF SALE DATED AS OF APRIL___, 2024 BETWEEN HOWARD P. MAGALIFF, CHAPTER 7 TRUSTEE OF JAANA COLANGELO, AS SELLER, AND SERGIO DIFILIPPI AND KIMBERLY NEAL, AS PURCHASER.

29.    To the extent that there may be any conflict or inconsistency between the terms and provisions of this Rider and the printed form of Contract of Sale to which this Rider is annexed (such Contract of Sale and this Rider together being sometimes herein called the "Contract"), the terms and provisions of this Rider shall govern.

30.    This Contract and Seller's obligations hereunder are expressly subject to the entry of an order of the United States Bankruptcy Court for the Southern District of New York in the chapter 7 bankruptcy case of Jaana Colangelo case # 23-22355 (SHL) approving the Contract and the transactions contemplated under the Contract and authorizing the sale fee and clear of liens and interests pursuant to 11 U.S.C. § 363(f). Seller agrees to make prompt application for such an order. Purchaser understands that this Contract is subject to the receipt of higher and better offers, provided, however, that the minimum overbid shall not be less than that amount which is Fifty Thousand Dollars ($50,000) higher than the Purchase Price set forth in this Contract. If the Bankruptcy Court does not enter such an order, Purchaser's sole remedy shall be a return of the Downpayment.

31.    **Submission of Contract.**    The submission of this Contract for examination and execution by Purchaser does not constitute an offer, option or reservation nor shall the conduct of the parties constitute same, and this Contract shall become effective as such only upon the actual execution thereof by Seller and Purchaser and delivery of a fully executed copy to Purchaser's attorney following the execution by Purchaser and delivery of the Contract to the attorneys for Seller together with the Downpayment required by the terms hereof. Prior thereto, Seller shall have the absolute right to Contract with any other person for the sale of the Premises or withdraw the Premises from the market.

32.    **No Recording of Contract.**    This Contract may not be recorded by Purchaser without the express written consent of Seller. Neither this Contract nor any note or memorandum thereof may be recorded in the Office of the Rockland County Clerk, or any other county or governmental office, except as otherwise specifically provided in this Contract. For breach thereof, Seller shall be entitled to an injunction to discharge same from the record and Purchaser shall be liable for all costs of such proceedings, including reasonable attorney's fees of Seller. Any breach of this provision will entitle Seller, at Seller's own option, to cancel this Contract and retain the Downpayment as liquidated damages, without further liability.

33.    **Counterparts.**    This Contract may be executed by the parties in separate counterparts, including facsimile and/or electronically transmitted signatures, each of which shall be deemed an original, and all such counterparts together shall constitute one and the same agreement. However, this Contract shall not be effective or enforceable against any party hereto until all parties have executed at least one counterpart of this Contract and the Downpayment has been paid to Escrowee by means of a wire transfer of immediately available funds.

34.    **Dishonored Downpayment Check.**  In the event that the check given as the Downpayment and delivered by Purchaser to Seller upon the execution of this Contract is dishonored for any reason by the bank upon which it is drawn and if not replaced by a bank check within three business days after notice, then Seller, in addition to any right and remedies which Seller may have, may, at Seller's option, declare this Contract null and void and at an end and, thereupon, Seller shall be relieved and release from all obligations thereunder.

35.    **Full Understanding.**  The parties hereto hereby acknowledge that they have read and fully understand the entire Contract of Sale, including this Rider to the Contract of Sale, and that they have been represented by attorneys of their own choosing and that said attorneys have advised the parties with respect to their rights and duties under this Contract.

36.    **Notices.**  (a)   All notices, demands, and requests (hereinafter collectively called "Notices") which either party is required or may desire to give to the other under this Contract shall be in writing, and shall be given by registered or certified mail, postage prepaid, return receipt requested, or by receipted express delivery, addressed to the parties at their respective addresses set for the on page 1 of this Contract with copies as follows (or to any other address specified in a Notice given in accordance with this paragraph):

if to Seller:                          Elwood F. Collins, Esq.
                                       R3M Law, LLP
                                       335 Madison Avenue, 9th Floor
                                       New York, NY 10017
                                       Tel: (646) 453-7855
                                       Fax: (212) 913-9642
                                       Cell: (917) 741-0759
                                       Email: ecollins@r3mlaw.com

if to Purchaser:                       Joseph R. Vasile, Esq.
                                       5009 Avenue N
                                       Brooklyn, NY 12234
                                       Tel: (718) 927-4100
                                       Fax: (7180 927-1507
                                       Cell:
                                       Email: jrvatty@gmail.com

(b)    Notice sent as aforesaid shall be deemed to have been served for all purposes under this Contract upon delivery. Any Notice by either party to the other may be signed by the attorney for the party giving the Notice. Email addresses are set forth herein as a matter of convenience only and shall not be an acceptable medium for the delivery of Notices.

37.    **Acceptance of Deed.**  The acceptance of the deed by Purchaser shall be deemed to constitute full performance of every agreement and obligation of Seller and no agreement, representation or warranty shall survive delivery of the Deed unless such survival is specified in this Contract or otherwise in writing.

38.    **No Representations by Seller – Buyer to Take As Is.**  The Premises is being sold and delivered **"AS IS" and "WHERE IS", "WITH ALL FAULTS"**, without any representations, covenants, guarantees or warranties of any kind or nature whatsoever. It is expressly understood and agreed that Seller has not made any representations as to the physical condition or operation of the Premises, the zoning classification of the Premises, the uses to which the Premises may be put, the taxes affecting the Premises, or any other thing or matter relating to the Premises. Seller is not bound by any statements, representations, or information that may have been given to Purchaser by any person pertaining to same, unless specifically set forth herein. Purchaser expressly acknowledges that Purchaser has made a thorough inspection of the Premises and is familiar with the size, configuration, and condition of the realty and the structures, personal property, equipment, and/or fixtures included in this conveyance and Purchaser agrees to accept the same in its present condition and state of affair except as elsewhere provided in this Contract. Purchaser acknowledges Seller is not obligated to install or replace any equipment or appliances in the Premises or otherwise make any repairs, improvements or decorations in the Premises or to its equipment, doors, windows, appliances, cabinetry or fixtures. Any damage to walls, floors or ceilings as the result of the removal of nails, hooks or brackets shall not be required to be repaired by Seller. Any wall and floor discoloration, staining and other minor damage (including but not limited to sun fading) shall likewise not be required to be repaired by Seller.

39.    **DISCLOSURE OF INFORMATION ON LEAD-BASED PAINT AND LEAD-BASED PAINT HAZARDS LEAD WARNING STATEMENT.**  Every purchaser of any interest in residential real property on which a residential dwelling was built prior to 1978 is notified that such property may present exposure to lead from lead-based paint that may place young children at risk of developing lead poisoning. Lead poisoning in young children may produce permanent neurological damage, including learning disabilities, reduced intelligence quotient, behavioral problems, and impaired memory. Lead poisoning also poses a particular risk to pregnant women. The seller of any interest in residential real property is required to provide the buyer with any information on lead-based paint hazards from risk assessment or inspection in the Seller's possession and notify the buyer of any known lead-based paint hazards. A risk assessment or inspection for possible lead-based paint hazards is recommended prior to purchase. Seller has no knowledge of lead-based paint and/or lead-based paint hazards in the housing. Purchaser acknowledges Purchaser's receipt of the pamphlet Protect Your Family From Lead In Your Home. Purchaser has waived the opportunity to conduct a risk assessment or inspection for the presence of lead-based paint and/or lead-based paint hazards.

40.    **Invalidity of Provisions**. In the event that any term or provision of this Contract or the application thereof to any person or circumstance shall, to any extent, be invalid or unenforceable, the remainder of this Contract and Rider, where the application of such terms or provisions to persons or circumstances other than those as to which it is held invalid or unenforceable, shall not be affected thereby, and each term and provision of this Contract and Rider shall be valid and be enforced to the fullest extent permitted by law.

41.    **Mansion Tax**. Intentionally Omitted.

42.    **Governing Law and Venue**. The law of the State of New York shall govern the interpretation of this Contract and Rider. Venue, with respect to any action or proceeding commenced as a result of this Contract and Rider, shall be in Westchester County.

43.    **No Action to Cure Title Defects**. Supplementing Paragraph 21 of the Contract, Seller shall not be obligated or required to bring any action or proceeding to render title marketable or insurable (other than a mortgage placed on the property by or for the benefit of Seller), and any action taken by Seller to remove any Defect shall not be deemed an admission on Seller's part that Seller is obligated to remove same or that such Defect is one which would give Purchaser the right to cancel the Contract. If Seller is unable to remove such Defects as hereinabove provided, Purchaser shall have the right to waive any such Defects, and in such event the parties hereto shall proceed to Closing without any abatement in the purchase price.

44.    **Adjustments and Apportionments**. Supplementing Paragraph 18 of the Contract, for the purpose of making such apportionments, apportionments shall be made on the basis of a 366-day year for the actual number of days elapsed and calculated as of midnight of the day preceding the Closing. Any assessment installment due subsequent to the Closing Date shall be assumed by Purchaser. Charges for any transferable service contracts that Purchaser has agreed to accept shall be apportioned as of the Closing.

45.    **Truth In Heating Law**. Under New York Energy Law Section 17-103, commonly known as "Truth in Heating Law", Purchaser has the right to a summary of the heating and/or cooling bills or a complete set of said bills relating to the Premises and information concerning the insulation in the Premises. Purchaser expressly waives the right to insulation, heating and cooling information and copies or a summary of any of said bills as to which Purchaser may be entitled and does not request them in connection with this transaction.

46.    **Checks**. Purchaser hereby unconditionally guarantees the payment of all checks delivered by or for the account of Purchaser at Closing in payment of the purchase price, apportionments or otherwise, whether such checks are issued by Purchaser, a lending institution issuing a mortgage (if any), lender's attorneys (from special, trust, mortgage, escrow or other accounts) or any other source. Purchaser waives presentment, protest, notice of protest and any other notice to which the Purchaser may be entitled. This guaranty shall include of all Seller's collection expenses, including reasonable attorney's fees, and shall survive termination of the Contract and delivery of the deed.

47. **Certificate of Occupancy**. Nothing contained in the Contract shall be construed to require Seller to obtain a Certificate of Occupancy or any other certificate.

48. **Purchaser's Representations**.

(a)   Each party Purchaser represents that neither he nor she has filed a voluntary petition under the Bankruptcy Code, nor either such party Purchaser been the subject of an involuntary petition under the Bankruptcy Code, within the past seven (7) years.

(b)   Each party Purchaser represents that such party Purchaser has no relationship or affiliation with the debtor, Jaana Colangelo. At closing, each party Purchaser shall provide an affidavit to Seller that, as of date of closing, he or she has no relationship or affiliation with the debtor.

49. **Smoke Detector and Carbon Monoxide Affidavit**. Supplementing Paragraph 16(f) of the Contract, Seller shall provide at Closing an affidavit stating that at the time of transfer of the Premises there is installed in the dwelling an operable single station smoke detecting alarm device in accordance with Section 375(5) of the Executive Law and an operable carbon monoxide detector in accordance with Section 378(5)(a) of the Executive Law.

50. **Affirmative Insurance**. Anything herein to the contrary notwithstanding, any judgments, mortgage liens, other encumbrances, encroachments or any other Defects may be, and shall be deemed satisfied upon Seller depositing with the title company funds sufficient to satisfy same in full, together with the cost of recording the satisfaction instrument(s) and/or causing a title company to affirmatively insure title to the Premises that are the subject of the Contract.

51. **Property Condition Disclosure Act**. Purchaser hereby acknowledges the disclosure requirements of the Property Condition Disclosure Act, Real Property Law Article 14, and represents that Purchaser has had an opportunity to make an independent examination and inspection of the Premises. Purchaser also hereby waives, releases, and discharges all rights, claims, and actions against Seller and against the Premises arising out of, under or in connection with the Property Condition Disclosure Act and Purchaser's sole right and remedy under or pursuant to the Property Condition Disclosure Act shall be the receipt of a Five Hundred Dollar ($500.00) credit at Closing. Seller hereby agrees to pay and allow such credit.

52. **Access to the Premises**. Notwithstanding anything herein to the contrary and provided that the Premises is unoccupied, Purchaser shall have the right, at reasonable times and upon reasonable notice (by telephone or otherwise) to Seller or to Seller's broker, to visit the Premises before Closing if accompanied by Seller's broker. Purchaser agrees to indemnify, defend and hold Seller harmless from and against any losses, liabilities, damages, claims, costs or expenses for injury or damage to persons or property, including without limitation, the property of Seller, as a result of the negligent or willful acts or actions of Purchaser, its agents,

contractors, decorators, representatives or invitees. Seller shall have no obligation to repair any such damage and may convey the Premises to Purchaser subject to such damage. Purchaser's agreement to indemnify Seller shall survive the Closing or the earlier termination of this Contract.

**53. Real Estate Reporting Person.** Supplementing subparagraph (f) paragraph 28, the parties agree that, unless Purchaser has a mortgagee that fulfills the obligation, Purchaser's attorney is hereby designated as the "real estate reporting person" with respect to this transaction and is responsible for completion and filing of Form 1099-S or such other successor forms as may be prescribed by the Internal Revenue Service and for fulfilling all the obligations and requirements of Section 6045 (e) of the Internal Revenue Code.

**54. Attorneys' Fees in Litigation.** In the event that either Seller or Purchaser shall bring any action on account of any breach of covenant, agreement or condition contained in the Contract or in any agreement entered into between the parties at the time of Closing, the prevailing party in such litigation shall be entitled to reasonable attorneys' fees, in addition to the amount of the judgment, and costs.

**55. No Sales Tax Obligation.** It is agreed that the assignment by Seller to Purchaser of any fixtures and/or personal property is incidental to the sale of the Premises and, accordingly, there is no obligation for sales (or similar) tax to be paid or accrued with respect thereto.

**56. Errors and Omissions.** Any errors or omissions in computing apportionments at Closing shall be corrected and payment made to the proper party promptly upon discovery. The provisions of this paragraph shall survive for a period of one year after the Closing

**57. New York State Transfer Tax; Additional Closing Costs.** Notwithstanding anything to the contrary contained in the Contract, Purchaser shall be responsible for and pay the cost of Form TP-584 preparation and the cost of any additional forms or documentation required by the Westchester County Clerk, all of which Purchaser shall cause to be prepared by Purchaser's attorney or by Purchaser's title company. Seller shall claim exemption from New York State transfer tax.

**58. Westchester Specific Requirement.** Seller acknowledges responsibility under Chapter 707 of the Laws of Westchester County to (a) cause a water test to be conducted at Seller's expense within ten (10) days of the execution of this Contract, and (b) provide Purchaser with confirmation that the test has been ordered. Seller agrees to adhere to the provisions of Section 707.03 including, within five (5) days of Seller's receipt of the water test results from a certified laboratory, delivering the report to the Purchaser and, if the tests reveal that the water does not meet the drinking water quality requirements established in Part 5 of the New York State Sanitary Code, Seller shall have the option to: (i) correct the condition at Seller's sole cost and expense to comply with the aforesaid drinking water quality requirements; or (ii) cancel the Contract and return the Downpayment, in which case neither the Seller nor the Purchaser shall be liable to the other, or the Parties may agree to consummate the transfer upon mutually acceptable terms and Purchaser shall correct the

condition. Notwithstanding the foregoing, to the extent that the cost of such compliance shall be $5,000 or less, Seller shall so comply and shall have no right to cancel the Contract.

SIGNATURE PAGE FOLLOWS

DocuSign Envelope ID: 6582FCF9-7808-4026-A3C0-1983EAC1093F

IN WITNESS WHEREOF, this Rider has been duly executed by the parties hereto.

SELLER:

_____
Howard P. Magaliff, Chapter 7 Trustee of
Jaana Colangelo

PURCHASER:

DocuSigned by:

Sergio Difilippi
_____
D9DC2A55C9CF4E6...
    Sergio Difilippi

DocuSigned by:

Kimberly Neal
_____
D9DC2A55C9CF4E6...
    Kimberly Neal

DocuSign Envelope ID: 6582FCF9-7808-4026-A3C0-1983EAC1093F

JOINDER

Pursuant to a certain stipulation and order dated March 12, 2024 (the "Order"), a copy of which is attached hereto as Exhibit A, the undersigned, Ronald Colangelo, consented to the sale by the Seller of his interest in the Premises pursuant to Section 363 (h) of the Bankruptcy Code.

By executing this joinder pursuant to and subject to the Order, the undersigned agrees to execute and deliver at the Closing: (i) a quitclaim deed in favor of the Purchaser with respect to the Premises and (ii) such affidavits as may be required by Purchaser's title insurance company in order for it to ensure Purchaser's title to the Premises, including an affidavit of title in customary form and an affidavit that the undersigned has been known by no other name in the past ten (10) years. Nothing contained in paragraph 1 of the Contract wherein the undersigned is referred to as a "party Seller" shall be deemed to impose upon the undersigned any obligation greater than the obligations imposed upon the undersigned pursuant to the Order.

Ronald Colangelo

Address: 69 Faneul Pl

New Rochelle Ny 10801