Exhibit "A"

FILED: WESTCHESTER COUNTY CLERK 12/21/2020 04:42 PM
NYSCEF DOC. NO. 320
23-22355-kyp    Doc 65-1    Filed 07/20/24    Entered 07/20/24 11:34:11    Exhibit A -
Decision & Order    Pg 2 of 10
INDEX NO. 59629/2018
RECEIVED NYSCEF: 12/21/2020

To commence the statutory time period for appeals as of right (CPLR 5513 [a]), you are advised to serve a copy of this order, with notice of entry, upon all parties.

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF WESTCHESTER
PRESENT: HON. WILLIAM J. GIACOMO, J.S.C.

-----------------------------------------x

BUSINESS FINLAND USA, INC.
(A Delaware Corporation),

                    Plaintiff,

– against –

JAANA BERNADOTTE-COLANGELO, FINPRO USA INC. (a New York Corporation), and RONALD COLANGELO,

                    Defendants.

-----------------------------------------x

Index No. 59629/2018

**Motion Seq. No. 5**

**DECISION & ORDER**

In an action to recover damages for faithless servant, fraud, conversion, breach of fiduciary duty, and the imposition of a constructive trust, the plaintiff moves for summary judgment on the first cause of action for faithless servant and on the fifth cause of action for the imposition of a constructive trust:

**Papers Considered**     NYSCEF Doc. No. 162-253; 255-319

1. Notice of Motion/Affidavit of Lasse Baldauf/Affidavit of Tomi Rauste/Exhibits 1-18/Affirmation of Benjamin M. Rattner, Esq./Exhibits 1-48;
2. Affirmation of Joseph A. Maria, Esq. in Opposition/Exhibits A-Z, AA-JJ/Affidavit of Jaana Colangelo/Affidavit of Ronald Colangelo/Exhibit A;
3. Reply Affirmation of Benjamin M. Rattner, Esq./Exhibits 1-11.

**Factual and Procedural Background**

Plaintiff commenced this action against its former employee, Jaana Bernadotte-Colangelo, and Finpro USA Inc., a corporation controlled by Bernadotte-Colangelo. The amended complaint asserts five causes of action: (1) faithless servant; (2) fraud; (3) conversion; (4) breach of fiduciary duty; and (5) imposition of a constructive trust.

Plaintiff alleges that while employed, Bernadotte-Colangelo used her power as sole signatory on Business Finland's checking account to steal hundreds of thousands and possibly millions of dollars by diverting funds to covertly maintained bank accounts, transferring the company's funds for her own use, misusing credit cards, issuing checks

FILED: WESTCHESTER COUNTY CLERK 12/21/2020 04:42 PM INDEX NO. 59629/2018
NYSCEF DOC. NO. 320 RECEIVED NYSCEF: 12/21/2020

23-22355-kyp    Doc 65-1    Filed 07/20/24    Entered 07/20/24 11:34:11    Exhibit A -
Decision & Order    Pg 3 of 10

Business Finland USA, Inc. v. Colangelo, Index No. 59629/2018

for herself, borrowing money for her own benefit, and falsifying accounting and bank statements, without plaintiff's consent or knowledge.

Plaintiff moves for summary judgment on the first cause of action for faithless servant and an order directing Bernadotte-Colangelo to disgorge all compensation she received from Business Finland between 2012 and 2018 in the amount of $522,732.79 and awarding punitive damages in the amount of $522,732.79.

Plaintiff also moves for summary judgment on the fifth cause of action for a constructive trust and directing the sale of the Colangelo's property located at 66 Wilson Drive, New Rochelle, New York, appointing a receiver to administer the sale; imposing a constructive trust over the proceeds of the sale after all the mortgage liens have been satisfied; and awarding all profits from the sale to Business Finland.

**Discussion**

The proponent of a motion for summary judgment must make a prima facie showing of entitlement to judgment as a matter of law, tendering sufficient evidence to eliminate any material issues of fact from the case (see *Winegrad v N.Y. Univ. Med. Ctr.*, 64 NY2d 851, 853 [1985]; *Zuckerman v City of New York*, 49 NY2d 557, 562 [1980]). Failure to make such showing requires denial of the motion, regardless of the sufficiency of the opposing papers (see *Winegrad v N.Y. Univ. Med. Ctr.*, 64 NY2d at 853).

"Once this showing has been made, however, the burden shifts to the party opposing the motion for summary judgment to produce evidentiary proof in admissible form sufficient to establish the existence of material issues of fact which require a trial of the action" (*Alvarez v Prospect Hosp.*, 68 NY2d 320, 324 [1986]; see *Zuckerman v City of New York*, 49 NY2d at 562). Mere conclusions, expressions of hope or unsubstantiated allegations or assertions are insufficient to defeat a prima facie showing of entitlement to summary judgment (see *Zuckerman v New York*, 49 NY2d at 562).

Plaintiff argues that Jaana stole funds from it by transferring funds from plaintiff's Chase business account to pay for her personal American Express credit card bills. Plaintiff asserts that Jaana used the stolen money to purchase jewelry, luxury vacations, and to renovate the home she shares with her husband. Plaintiff asserts that over time, Jaana misappropriated over $4.8M. On this motion, plaintiff only seeks summary judgment on the causes of action for the imposition of a constructive trust and for faithless servant as the damages for these claims, according to plaintiff, can be easily calculated.

Defendants do not dispute that Jaana withdrew funds from plaintiff's Chase account. Defendants assert that Jaana paid for plaintiff's business expenses on her personal AmEx card and that her US supervisors were aware of this practice as many of the expenses were for them. Therefore, defendants argue that Jaana was reimbursing herself for all the business expenses she charged on her AmEx card.

"Under what is commonly referred to as the faithless servant doctrine, '[o]ne who owes a duty of fidelity to a principal and who is faithless in the performance of his [or her]

2

FILED: WESTCHESTER COUNTY CLERK 12/21/2020 04:42 PM INDEX NO. 59629/2018
NYSCEF DOC. NO. 320                                                                          RECEIVED NYSCEF: 12/21/2020

23-22355-kyp    Doc 65-1    Filed 07/20/24    Entered 07/20/24 11:34:11    Exhibit A -
                            Decision & Order    Pg 4 of 10

Business Finland USA, Inc. v. Colangelo, Index No. 59629/2018

services is generally disentitled to recover his [or her] compensation, whether commissions or salary'" (*City of Binghamton v Whalen*, 141 AD3d 145, 147 [3d Dept 2016] *citing Feiger v Iral Jewelry*, 41 NY2d 928, 928 [1977]). Where defendants engaged in repeated acts of disloyalty, complete and permanent forfeiture of compensation, deferred or otherwise, is warranted under the faithless servant doctrine (*see William Floyd Union Free Sch. Dist. v Wright*, 61 AD3d 856, 859 [2d Dept 2009]).

The evidence submitted by plaintiff establishes that Jaana engaged in repeated disloyal conduct against plaintiff and therefore, a forfeiture of her compensation is warranted.

Lasse Baldauf, the former president of Finpro USA, Inc., submits an affidavit in support of plaintiff's motion. Baldauf worked for FinPro through June 2014. Thereafter, FinPro's name was changed to Business Finland USA, Inc. Plaintiff was set up in 2006 by the Finnish Foreign Trade Association. Jaana was one of plaintiff's employees responsible for providing administrative support to the New York and Connecticut offices. Plaintiff is owned by a Finnish organization that was a subsidiary of the Finnish government. Jaana never contributed any capital to plaintiff and was not a shareholder or director. Jaana opened plaintiff's bank account at Chase Bank and was an authorized signatory. Plaintiff entrusted her to handle its funding requests and disbursements and therefore, she had full access to plaintiff's bank account.

Baldauf attests that plaintiff received its funding by requesting funds from a subsidiary of the Finnish government. The Finnish government provided all the funds necessary to meet plaintiff's payroll and operational needs. In order to receive the funding, plaintiff submitted financial information for a yearly budget prepared by a subsidiary of the Finnish government in Finland. Based upon the financial information provided, plaintiff would estimate its funding needs for the following two or three months and request that estimated sum. Jaana made the requests. Baldauf did not see the paperwork that was actually submitted and did not approve or authorize requests for money in excess of the projected budget.

Baldauf attests that the Finnish government required plaintiff to submit bank records showing disbursement of monies provided. Baldauf states that the only way Jaana could have obtained funds in excess of plaintiff's budget would have been by manipulating the bank records. Baldauf was not aware of any altered bank records and did not approve or sign off on any altered bank records. Jaana was required to submit her expenses through a program called Webtem. Baldauf approved the expenses that were submitted on Webtem and to his knowledge, she was fully reimbursed for such expenses.

Tomi Rauste is the senior director of customer experience for Business Finland OY. Until August 2018, Rauste was the president of plaintiff. Jaana was paid $522,732.79 in compensation between 2012 and 2018. Plaintiff submits copies of W-2 statements for the years in question.

FILED: WESTCHESTER COUNTY CLERK 12/21/2020 04:42 PM INDEX NO. 59629/2018
NYSCEF DOC. NO. 320                                                                                              RECEIVED NYSCEF: 12/21/2020

23-22355-kyp    Doc 65-1    Filed 07/20/24    Entered 07/20/24 11:34:11    Exhibit A -
                            Decision & Order    Pg 5 of 10

Business Finland USA, Inc. v. Colangelo, Index No. 59629/2018

According to Rauste, Jaana had unfettered access to plaintiff's bank account at JP Morgan Chase Bank, N.A. She was expected to handle plaintiff's funding requests and disbursements as a key part of her job.

Rauste attests that plaintiff would estimate its funding needs and Jaana would request funds from the financial department of plaintiff's parent company in Finland hich would transfer the requested funds into plaintiff's Chase bank account ending in 0565. The parent company at times requested supporting bank statements to audit plaintiff's use of the funds. Providing such documentation was part of Jaana's job. Rauste attests that Jaana sent purported bank statements for the 0565 account showing use of the funds. However, according to Rauste, Jaana did not send true and accurate copies of plaintiff's Chase bank statements. Rather, Jaana created and sent fraudulent bank statements that hid her theft of plaintiff's assets.

Rauste attaches a copy of a fraudulent bank statement for June 2015. Jaana created what appeared to be actual Chase bank statements, although containing incorrect transaction details. No one in the Helsinki office had any reason to suspect that Jaana had sent them anything different from what they requested.

Rauste attests that from 2011 through 2017, Jaana stole more than $4.8M from plaintiff. Rauste states that the defendants took a family vacation to southern France at an unauthorized cost to plaintiff of over $100,000 in the summer of 2014. They also spent more than $85,000 for a country club membership between 2013 and 2018, which was paid with plaintiff's funds. According to the bank records, in 2015 and 2016, the defendants spent $38,118.13 on a pearl necklace, bracelet, earrings, and a Rolex using Jaana's American Express account, all of which were paid for using plaintiff's money. According to Rauste, the funds to pay Jaana's American Express bills originated from plaintiff's 0565 account. Jaana also transferred funds directly into her personal account by writing herself checks and making cash withdrawals from plaintiff's 0565 account.

Rauste stated that defendants used hundreds of thousands of dollars belonging to plaintiff to pay for renovations to their home such as an additional bedroom and bathroom to the second floor; changing the roof profile; updating the plumbing; new hardwood flooring on the first and second floors; new siding; repainting the interior of the house; updating the kitchen; a gas fireplace; gas generator; fencing; stonework; new garage doors and cabinets in the garage; and new windows.

In 2015 alone, Jaana charged $31,716 to pay an electrician, A Perfect Goldman Electrical Contractors, spent $19,294 on new appliances from Leibert's Royal Green in White Plains, and paid $24,672 for bathroom fixtures and furnishings with Consolidated Plumbing. Defendants paid for these improvements by using Jaana's American Express credit card and writing checks from Ronald's company Black Labrador. However, the money to pay the American Express bill and to fund Black Labrador came from plaintiff's 0565 account. The defendants charged at least $402,164.08 of expenses on Jaana's American Express card related to improving their residence. Jaana would pay the

4

FILED: WESTCHESTER COUNTY CLERK 12/21/2020 04:42 PM    INDEX NO. 59629/2018
NYSCEF DOC. NO. 320                                                    RECEIVED NYSCEF: 12/21/2020

23-22355-kyp    Doc 65-1    Filed 07/20/24    Entered 07/20/24 11:34:11    Exhibit A -
                          Decision & Order    Pg 6 of 10

Business Finland USA, Inc. v. Colangelo, Index No. 59629/2018

American Express bill directly from plaintiff's 0565 account or route money to her AmEx account.

Rauste provided an example based upon the documents submitted to the Court. On July 13, 2015, Jaana charged $4,620 to her AmEx card to pay California Closets. Then, on July 17, 2015, Jaana charged $4,130.06 to her AmEx card to pay Sunshine Hardwood Floors. With a week, Jaana repeatedly transferred funds from plaintiff's 0565 account to the defendants' personal account and used most of these transferred funds to pay off her AmEx card. Specifically, on July 22, 2015, Jaana transferred $4,935.78 from the 0565 account to the defendants' personal account. Two days later, on July 24, 2015, she paid $3,259.17 to her personal AmEx bill. On July 27, 2015, Jaana transferred $2,957.89 from the 0565 account to the defendants' personal account. That same day, she paid $2,230.34 to her personal AmEx bill. Jaana paid her American Express credit card with funds from plaintiff's 0565 account that she routed through the defendants' personal account. Rauste attests that the charges Jaana incurred relating to renovations of the residence did not serve any business purpose for plaintiff.

Rauste stated that although defendants used Ronald's company, Black Labrador, to pay for renovations to their residence and used checks written from Black Labrador's bank account, Black Labrador received funds from Jaana's AmEx card. The funds used to pay the AmEx card came from plaintiff's 0565 account. For example, on April 8, 2016, Ronald wrote a $5,000 check to Monti Contractors from Black Labrador for installation of a slate patio. Funds for this check came from payments Jaana made to Black Labrador via its PayPal account days earlier on April 5 and 6, 2016 using her AmEx card. Jaana then paid for these charges on her AmEx bill with funds obtained from plaintiff's 0565 account. The payments Jaana made to Black Labrador with her AmEx credit card did not serve any legitimate business purpose for plaintiff.

Black Labrador also received funds from plaintiff routed through the defendants' personal account. For example, on or about October 3, 2016, Jaana transferred $9,834.56 from the plaintiff's 0565 account to the defendants' account. On October 3 and 4, 2016, Jaana transferred $3,500 to Black Labrador's PayPal account, which Ronald then deposited into Black Labrador's bank account. He then wrote a $3,500 check to pay for the roof.

Rauste stated that Jaana submitted falsified bank statements to the "accounting department" in Finland. Rauste attached these purported statements to his affidavit. The 0565 account statements show payments to AmEx totaling $177,521.44 in June 2015, including a $71,766.45 payment on June 12, 2015, and several payments of over $15,000 in the second half of June 2015. However, the falsified statement for June 2015 does not contain any entries after June 12, 2015 and does not show any entries for payments to AmEx. Also missing were numerous transfers made from the 0565 account directly into the defendants' account. Jaana transferred $4,936.90 to the defendants' account on June 4, 2015, and another $7,965.00 to that same bank account on June 12, 2015. The purported account statement she provided to Helsinki omit the transfer to the defendants'

5

FILED: WESTCHESTER COUNTY CLERK 12/21/2020 04:42 PM
NYSCEF DOC. NO. 320
23-22355-kyp    Doc 65-1    Filed 07/20/24    Entered 07/20/24 11:34:11    Exhibit A -
                            Decision & Order    Pg 7 of 10
INDEX NO. 59629/2018
RECEIVED NYSCEF: 12/21/2020

Business Finland USA, Inc. v. Colangelo, Index No. 59629/2018

account on June 4th and showed a transfer of $2,267.73 (not $7,965.00) to the defendants' account on June 12th.

Further, in June 2015, the 0565 account statements show a payment of $21,920.57 to Paychex for payroll on June 12th, and a payment of $11,103.04 to Paychex for taxes on June 15th. The corresponding statement submitted to Helsinki shows the $21,920.57 payroll debit on June 12, 2015, and contains an additional $98,109.00 as "payroll" that is not reflected on the 0565 account statements.

Rauste further states that the July 2015 statement submitted to Helsinki omitted Jaana's payments to AmEx directly from the 0565 account, which amounted to $90,946.05. It also contained a false payroll entry on July 1, 2015 of $71,766.45 and $32,703 for payroll taxes that cannot be reconciled with the actual 0565 account statement. In the spring of 2017, plaintiff began to suspect that Jaana had misappropriated funds. Following a forensic accounting investigation that began at the end of 2017, plaintiff learned of Jaana's activities and terminated her employment.

Plaintiff has submitted to the Court the subpoenaed Chase account statements for the defendants' personal account; the account statements provided by Jaana to Helsinki; and the plaintiff's subpoenaed Chase account statements.

In opposition, defendants failed to raise a triable issue of fact. Ronald's statements that he never had any involvement or received any payments from plaintiff and that his company, Black Labrador, was never funded by plaintiff are without any supporting evidence.

Jaana states that she never siphoned any funds from plaintiff. She attests that defendants renovated their home to accommodate their growing family. Jaana admits that she became sole signatory on plaintiff's 0565 account in 2015. According to Jaana, the procedure for money requests was informal. She would submit a request by email to the Helsinki office. The standard monthly request was for $150,000; $100,000 was for monthly salaries and 401(k) contributions. The salary funds were automatically transferred to Paychex from plaintiff's 0565 account.

Jaana states that Webtem was a proprietary system for reimbursement of employee expenses such as travel, parking, and food. Jaana states that the expenses were to be entered by the employee but often, she entered the expenses and therefore, many expenses were attributed to her. She used her AmEx card to pay for travel expenses of employees and submitted the expenses through Webtem. Jaana states that plaintiff failed to produce Webtem records and since she is not an employee she is unable to access the records. According to Jaana, those records would show that she input expenses she had paid for travel, hotels, and events for reimbursement. She further states that plaintiff did not maintain copies of records of trips within the US which she was responsible for paying.

FILED: WESTCHESTER COUNTY CLERK 12/21/2020 04:42 PM
NYSCEF DOC. NO. 320
23-22355-kyp   Doc 65-1   Filed 07/20/24   Entered 07/20/24 11:34:11   Exhibit A -
Decision & Order   Pg 8 of 10
INDEX NO. 59629/2018
RECEIVED NYSCEF: 12/21/2020

Business Finland USA, Inc. v. Colangelo, Index No. 59629/2018

Jaana states that Navision was the accounting software used and referred to as the 18000 account for advanced payments for rent due for the nationwide offices. According to Jaana, Baldauf approved all office and travel related expenses which were downloaded to Webtem. Only after Baldauf's approval for office and travel-related expenses did she submit expenses and make payments for plaintiff. Some of the payments were for reimbursement for office expenses. Payments were also made through her personal credit cards. Jaana states that she charged on her personal AmEx card business rent payments of $15K in March 2013, and $5K in April and May 2013.

Jaana states that she charged business rents, meeting expenses, hotel expenses, airline flights, phones, and training on her personal AmEx card. She attests that Baldauf and Rauste were aware of this usage. In October 2017, she organized a business event at the Boathouse in Central Park and paid for it on her AmEx card. Jaana explained that the reason she used her AmEx card is because there was a limit of $10K for expenditures outside of employee related expenses such as salaries, pensions, or bonuses. At the end of the year, she prepared a closing statement which included unused vacation days, 401(k), social security, and advanced miscellaneous payments. These payments were reviewed and signed off by Baldauf and then forwarded to the Helsinki office. She entered all of the additional payments under the Chase 0565 account. She also personally made cash payments which she entered under the 18000 Navision account.

Jaana states that once her expenses were approved, she issued checks to herself and transferred the approved amounts directly to her AmEx account or to defendants' personal bank account. She attests that this was not a secret and she never hid this procedure from anyone. Jaana attests that she has never used monies belonging to plaintiff for her personal gain or benefit. Jaana explained the discrepancies by stating that she was bad at submitting her reimbursements. In July 2015, she reimbursed herself $71,000 from plaintiff's account for business expenses that she incurred in 2014.

She acknowledged that in June 2015 she provided a bank statement to the Helsinki office which was not entirely accurate because she wanted to be paid for all of her expenses.

Jaana attests that she accumulated thousands of reward points with AmEx and paid for family trips with those points not with plaintiff's funds. She refers to her AmEx statements with closing dates of 11/04/15 and 12/04/15 wherein she used 449,417 points for personal travel and expenses. Her AmEx card was used for personal transactions including her membership to Hampshire Country Club. She never purchased jewelry or a Rolex using plaintiff's funds.

Based upon the foregoing, the Court finds a persistent pattern of disloyalty throughout Jaana's employment with plaintiff. Jaana has failed to rebut plaintiff's prima facie showing that she misappropriated funds. As a result, forfeiture of compensation is the appropriate remedy. Plaintiff paid Jaana $522,732.79 in compensation between 2012 and 2018. Jaana has not submitted any evidence to challenge this amount. She concedes

FILED: WESTCHESTER COUNTY CLERK 12/21/2020 04:42 PM INDEX NO. 59629/2018
NYSCEF DOC. NO. 320 RECEIVED NYSCEF: 12/21/2020

23-22355-kyp    Doc 65-1    Filed 07/20/24    Entered 07/20/24 11:34:11    Exhibit A -
Decision & Order    Pg 9 of 10

Business Finland USA, Inc. v. Colangelo, Index No. 59629/2018

that her yearly salary was $86,226.72. Therefore, plaintiff is entitled to a forfeiture of Jaana's compensation. Jaana has failed to demonstrate a basis for apportioning the forfeiture of compensation to specific tasks as her compensation was not based on a task by task basis (see *G.K. Alan Assoc., Inc. v Lazzari*, 44 AD3d 95 [2d Dept 2007]; *City of Binghamton v Whalen*, 141 AD3d 145 [3d Dept 2016]). "Where, as here, defendants engaged in repeated acts of disloyalty, complete and permanent forfeiture of compensation, deferred or otherwise, is warranted under the faithless servant doctrine" (*William Floyd Union Free Sch. Dist. v Wright*, 61 AD3d 856, 859 [2d Dept 2009]).

Defendants' assertion that Jaana's expenditures on her AmEx card were for plaintiff's business purposes for which she was entitled to reimbursement does not raise an issue of fact. Plaintiff demonstrated that Jaana engaged in repeated acts of disloyalty. Whether Jaana also made legitimate business charges on her personal AmEx card is of no moment. Jaana's entitlement to reimbursement for business expenses legitimately made on her AmEx card may be relevant to the remaining causes of action and will be determined at trial.

A constructive trust may be imposed when property has been acquired in such circumstances that the holder of the legal title may not in good conscience retain the beneficial interest (see *Ning Xiang Liu v Al Ming Chen*, 133 AD3d 644, 644-645 [2d Dept 2015]). "The elements needed for the imposition of a constructive trust are (1) a confidential or fiduciary relationship, (2) a promise, (3) a transfer in reliance thereon, and (4) unjust enrichment" (*Cerabono v Price*, 7 AD3d 479, 480 [2d Dept. 2004]).

Defendants argument that plaintiff is not entitled to a constructive trust because the property was not acquired with stolen funds has already been rejected by this Court in its decision dated September 26, 2019. In that decision and order, this Court denied defendants' motion to renew and reargue the plaintiff's motion to amend the complaint and their motion to cancel the notice of pendency. With respect to the cause of action for the imposition of a constructive trust, this Court, referring to the reasoning and principles of *Keen v Keen*, 140 AD2d 497 (2d Dept 1989) and *Jacobs v Abramoff*, 148 AD2d 497 (2d Dept 1989), held:

> In the amended complaint, the plaintiff seeks to impose a construct trust on the defendants' marital home which was allegedly renovated with funds that were fraudulently and improperly taken from plaintiff. While those funds were not used to purchase the marital home, the funds, it is alleged, were used to make significant structural renovations to the marital home. The defendants' contention that the imposition of a constructive trust is improper because the marital home was not acquired with the plaintiff's funds is unavailing. The opportunity for abuse and unfairness, if the allegations herein are proven, is equally present where the improperly diverted funds were used to make significant improvements on the marital home rather than to acquire real property.

8

FILED: WESTCHESTER COUNTY CLERK 12/21/2020 04:42 PM
NYSCEF DOC. NO. 320
INDEX NO. 59629/2018
RECEIVED NYSCEF: 12/21/2020

23-22355-kyp    Doc 65-1    Filed 07/20/24    Entered 07/20/24 11:34:11    Exhibit A -
Decision & Order    Pg 10 of 10

Business Finland USA, Inc. v. Colangelo, Index No. 59629/2018

==The Court finds that plaintiffs demonstrated prima facie entitlement to the imposition of a constructive trust by establishing that the signatory power entrusted by plaintiff to Jaana was used by Jaana to divert funds from plaintiff's Chase account and that those funds were improperly used to pay for significant renovations to the defendants' home== (see *Galasso, Langione & Botter, LLP v Galasso*, 176 AD3d 1176 [2d Dept 2019]). In opposition, defendants failed to raise a triable issue of fact. The issue of damages, however, shall be determined at trial.

The Court declines to exercise its authority to grant summary judgment to Ronald Colangelo as a non-moving party.

Accordingly, it is

**ORDERED** that the plaintiff's motion for summary judgment on the first cause of action for faithless servant and on the fifth cause of action for the imposition of a constructive trust is GRANTED.

Counsel for all parties are directed to appear in the Settlement Conference Part, at a date and time to be provided.

Dated:      White Plains, New York
            December 21, 2020

                                            _____
                                            HON. WILLIAM J. GIACOMO, J.S.C.

H: ALPHABETICAL MASTER LIST – 2/Business Finland v. Colangelo